UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN PATRICO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 4:14CV00338 AGF |
| | ) | |
| A.W. CHESTERTON COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This wrongful death action is before the Court on Plaintiffs' motion to remand the case to the state Court in which it was filed. Plaintiffs are the heirs of the decedent whom they allege died as a result of exposure to asbestos. For remand, they argue that the removal of the case by Defendant Mallinckrodt US Holdings, LLC, ("Mallinckrodt") was untimely. On May 21, 2014, oral argument was held on the motion to remand. For the reasons set forth below, the motion to remand shall be denied.

## BACKGROUND

On October 18, 2012, Plaintiffs filed a petition in Missouri state court, alleging that during the course of the decedent's employment as a bricklayer from 1946 to 2003, he was exposed to asbestos fibers emanating from products that were manufactured, sold, distributed, and/or installed by the 28 named Defendants. With respect to Mallinckrodt, Plaintiffs alleged that it negligently or willfully failed to make the premises it owned or controlled "at/in St. Louis, MO," where the decedent worked as an independent contractor from 1983 to 2003, reasonably safe (Counts V and VI).

On November 29, 2012, Mallinckrodt emailed Plaintiffs as follows:

Can you please advise at what facility the plaintiff worked in Missouri, and specifically where at that facility he worked? We need to know or we will be forced to remove the case to federal court based on federal officer[1] and E.E.O.I.C.P.A. [Energy Employees Occupational Illness Compensation Program Act].

Plaintiffs' counsel responded that same day, stating:

He worked at the St. Louis plant, I don't know exactly where just yet as he was there over a long period of time. I'll be sending you discovery for contracts between Mallinckrodt and my client's masonry company.

That being said, this gentleman was a bricklayer doing masonry work, didn't start working at Mallinckrodt as I understand it until the 1980's, was not a Mallinckrodt employee, DOE [Department of Energy] worker, contractor or subcontractor and was in no way affiliated with the uranium enrichment program that ended there in or about 1962 I believe.

Mallinckrodt requested additional information as to the address of the "St. Louis" plant, stating "there is more than one St. Louis facility for Mallinckrodt; which facility is important to Mallinckrodt." Plaintiffs responded by stating that they did not have the exact address but that it was "a plant in downtown St. Louis." A few minutes later, Mallinckrodt thanked Plaintiffs for the reply. (Doc. No. 32-1.)

On December 14, 2012, Mallinckrodt's Request for Production directed to Plaintiffs requested "[a]ny and all documents and/or photographs which identify any of Defendant's premises or work sites where the decedent was employed and the type, nature and location of such employment within such premises or work site." (Doc. No. 1-3.) This discovery was responded to on January 29, 2013; Mallinckrodt asserts, and

---

[1] 28 U.S.C. § 1442(a)(1) authorizes removal by "any officer (or person acting under that officer) of the United States or any agency thereof," sued "in an official or individual capacity for or relating to any act under color of such office . . . ."

Plaintiffs acknowledged at the hearing, that the response did not provide any additional information with respect to the specific St. Louis location at which the decedent worked. (Doc. No. 1.)

Plaintiffs' Request for Production directed to Mallinckrodt on July 25, 2013, asked for production of all writings documenting work performed by the decedent from 1951 to 2013 at the Mallinckrodt "St. Louis facilities" and defined that term as meaning the "entirety of the Mallinckrodt owned or operated buildings, plants, or other facilities that comprise the Mallinckrodt operations listed publicly as being located at 3600 N. 2nd Street, St. Louis, Missouri."[2] (Doc. No. 20-4.)

Plaintiffs' First Supplemental Request for Production of Documents directed to Mallinckrodt on January 28, 2014, defined "St. Louis facilities" as meaning "the entirety of the Mallinckrodt owned or operated buildings, plants, or other facilities that comprise the Mallinckrodt operations listed publicly as being located at 3600 N. 2nd Street, St. Louis, Missouri to include, but not be limited to, building numbers 6, 7, 10, 222, 200 east and west, and 51A." (Doc. No. 20-5.) At oral argument, the parties clarified that it was Plaintiffs' own investigation that identified the buildings potentially at issue, and that this information was not provided by Mallinckrodt, or even known to it until it received the Supplemental Request for Production.

Mallinckrodt filed its Notice of Removal on February 24, 2014, asserting federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), which authorizes removal by "any officer (or person acting under that officer) of the United States or any agency thereof,

---

[2] This address is in downtown St. Louis.

sued in an official or individual capacity for any act under color of such office."

Mallinckrodt explained as follows:

> In the early 1940's the United States commenced uranium-refining operations at Mallinckrodt facilities in St. Louis. By 1945 the United States awarded Mallinckrodt a . . . contract . . . to operate a government-owned production plant for uranium products on property leased from Mallinckrodt. Government operations quickly expanded at the Destrehan Street Facility [at N. 2nd Street in downtown St. Louis] with the Government constructing approximately 60 buildings for use in a variety of milling and recovery operations with uranium chemical compounds as well as refined uranium ore for the U.S. Government . . . . During the closeout of operations in 1957, many of these buildings were dismantled but 20 government-owned and constructed buildings were transferred to Mallinckrodt (including buildings 6 and 7) as part of a settlement. Decontamination work by the Government continued until 1962 when the plant was released to Mallinckrodt from the United States Government. Buildings 6 and 7 remained at the Destrehan Street facility until they were demolished in 1997. Thus the construction of Buildings 6 and 7, as well as more than a dozen other buildings in existence at the Destrehan Street Facility, was conducted by and for the United States Government. This included the specification and installation of any asbestos that may have existed in the buildings themselves. The asbestos in these buildings was specified and installed when the buildings were owned by the United States Government and Mallinckrodt was operating the buildings under color of the United States Government pursuant to its then top secret contract. Plaintiffs' claims against Mallinckrodt accordingly are all causally connected to acts taken under color of the United States Government pursuant to its . . . contract.

(Doc. No. 1 at 4-5.)[3] In the notice of removal, Mallinckrodt stated as follows:

"This Notice of Removal is timely as it is filed within 30 days of Defendants'

---

[3] Mallinckrodt was not required to obtain the consent of any other Defendants in the action to remove this action in its entirety under §1442(a)(l). *See Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981).

4

receipt of amended discovery request which explicitly disclosed that Plaintiffs are seeking a remedy that affords a basis for federal jurisdiction." (Doc. No. 1.)[4]

## ARGUMENTS OF THE PARTIES

Plaintiffs assume *arguendo* that the case was removable based on federal officer jurisdiction, but argue that removal came too late pursuant to Title 28 U.S.C. §1446(b)(3). This section provides in relevant part that when a case stated by the initial pleading is not removable, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of an amended complaint . . . or other paper from which it may first be ascertained that the case is one which is or has become removable." It is not disputed that emails and written discovery responses constitute "other paper" for purposes of §1446(b)(3).

Plaintiffs argue that the basis for federal officer removal by Mallinckrodt was ascertainable from "other paper" on November 29, 2012, when Plaintiffs emailed Mallinckrodt that the decedent worked at the St. Louis plant where the uranium enrichment program had been located; and certainly on July 25, 2013, when Plaintiffs defined "St. Louis facilities" to refer to Mallinckrodt's downtown St. Louis premises. By alleging that the entire downtown facility was at issue, this necessarily included parts of the facility that gave rise to federal officer jurisdiction. Plaintiffs maintain that their allegations, directed at the "entire" facility, provided the necessary notice of federal officer removability, and that the definition of "St. Louis facilities" in the January 28,

---

[4] Mallinckrodt also asserted that removal was warranted under 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiffs' claims against Mallinckrodt were completely preempted by the EEOICPA; this basis for removal is no longer being pursued.

2014 Supplemental Request for Production, added nothing of significance with respect to such notice.  Plaintiffs note that case law establishes that federal officer liability is to be construed broadly.

Mallinckrodt contends that the first "other paper" from which it could ascertain that the case was removable was Plaintiffs' January 28, 2014 First Supplemental Request for Production, because that document "for the very first time, brought the scope of Plaintiffs' allegations from one vaguely directed at a huge complex of hundreds of buildings to one focused on a small number of buildings to which federal defenses attach."  Plaintiffs do not dispute Mallinckrodt's description at oral argument of the downtown St. Louis facility at the relevant times as comprising approximately 60 acres with five to nine plants, each consisting of seven to 20 buildings; of these buildings nine or ten were "government buildings" that remained in existence in the 1950s, three of which were still standing in the late 1990s.

## DISCUSSION

It is undisputed that the present action was not removable based on the initial complaint; and as noted above, it is also undisputed that emails and written discovery responses constitute "other paper" for purposes of §1446(b)(3).  "[T]he information supporting removal in . . . other paper must be unequivocally clear and certain to start the time limit running for a notice of removal under [§1446(b)]."  *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002) (citation omitted); *see also Farmland Nat'l Beef Packing Co., L.P. v. Stone Container Corp.,* 98 F. App'x 752, 755 (10th Cir. 2004) ("[F]or a paper to fall within the removal statutes, it must be unambiguous."); *State Farm*

*Fire & Cas. Co. v. Valspar Corp., Inc*., 824 F.Supp.2d 923, 930 (D.S.D. 2010) (reasoning that the Eighth Circuit would adopt the same standard).

As a corollary to clear-and-unequivocal-notice requirement, courts do not impose upon a defendant a duty to investigate and determine removability where the initial pleading or subsequent document indicates that the right to remove *may* exist, although a defendant must apply "a reasonable amount of intelligence" to the matter. *Cutrone v. Mortg. Elec. Registration Systs., Inc*., ___ F.3d ___, 2014 WL 1492715, at *5 (2d Cir. 2014); *see also Akin v. Ashland Chem. Co*., 156 F.3d 1030, 1036 (10th Cir. 1998).

Mallinckrodt, as the removing defendant, bears the burden of proving removal is proper and all prerequisites to federal jurisdiction are satisfied. *See In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993) (per curiam). Federal courts must "resolve all doubts about federal jurisdiction in favor of remand" and are to construe legislation permitting removal, including the time limits for doing so, strictly. *Dahl v. R.J. Reynolds Tobacco Co.,* 478 F.3d 965, 968 (8th Cir. 2007).

The Court concludes that here, although investigation by Mallinckrodt into which buildings the decedent worked in or near at its downtown facility might or might not[5] have revealed the basis for removal that it asserts, such an investigation was not required by Mallinckrodt. Application of a reasonable amount of intelligence to the November 29, 2012 email exchange between Mallinckrodt and Plaintiffs and to Plaintiffs' July 25, 2013 Request for Production would not have

---

5   Mallinckrodt argues, for example, that the decedent's company had many employees, and the mere fact that the company had a contract to provide work on a particular building, does not mean the decedent was at that building.

7

made federal officer removability clear. *See Akin*, 156 F.3d at 1035 (holding in toxic tort case that the first clear notice of federal officer removability was given in answer to interrogatory; ambiguity stemmed from the plaintiffs' allegations of injuries sustained while working "at" or "for" an Air Force base, and, only after receipt of answers to interrogatories were the defendants provided sufficient notice that the conduct sued upon took place wholly within the federal enclave, and under federal direction).

In sum, the Court concludes that no "other paper" in this case was sufficient to trigger the 30-day removal period more than 30 days before the case was removed, and that Mallinckrodt has met its burden to show that removal was timely.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to remand this case to the state court to which it was filed is **DENIED**. (Doc. No. 20.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of May, 2014.